UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Faith Elsharkawy, as herself in her Individual capacity, and as Trustee for the Next-of-Kin of J.L.E., Decedent<br><br>Plaintiff,<br><br>v.<br><br>Chisago Lakes School District Board of Education, Independent School District No 2144, Chisago Lakes Area Schools d/b/a Chisago Lakes Schools, Dave Ertl, Jason Thompson, Carrie Hoffman, Jerilyn Mattson, Angela Christenson, Shira Ben-Heim, Leah Taylor, Carter Vogt, Laura Gustafson, and Jane/John Does,<br><br>Defendants. | Case No. 20-cv-01971 (DSD/ECW)<br><br>**JOINT RULE 26(f) REPORT** |

Counsel for the parties participated in the meeting required by Fed. R. Civ. P. 26(f) and the Local Rules, on February 1, 2021, and prepared the following report.

The initial pretrial conference in this matter is scheduled for February 11, 2021, before United States Magistrate Judge Elizabeth Cowan Wright, by conference bridge.

**DESCRIPTION OF CASE**

1. Concise factual summary of Plaintiff's claims;

   On April 29, 2018, Mrs. Elsharkawy found her son, Jacob Letourneau-Elsharkawy, hanging lifeless inside a backyard shed behind their home. Jacob committed suicide after years of enduring intense physical and verbal bullying while at Chisago Lakes School District. Whether it was other students or staff, he was targeted on the basis of being Muslim and being identified with certain learning and behavioral disabilities. This went on for the entirety of his time enrolled at Chisago Lakes School District. This treatment was pervasive and often in the form of derogatory and discriminatory comments, and rose to the level of physical

8

assault multiple times. Jacob and Mrs. Elsharkawy repeatedly reported this misconduct to school officials, but adequate intervention was not taken to protect Jacob or provide him with a safe or supportive school environment. Instead of intervening or removing the bullies from Jacob, school officials retaliated against Jacob, further excluded him from school in violation of his IEP, and did not make his environment any safer or inclusive.

This treatment went on for years, most relevantly while Jacob was in eighth and ninth grade. In the week leading up to his suicide, Jacob was given an in-school suspension each day for either reporting bullying was occurring or telling staff to assist with his behavioral and learning difficulties. Each day, he would suffer an anxiety attack for fear of how he would be treated in school by staff and other students. Defendants were aware Jacob had an IEP that would not have permitted exclusionary punishment in response to his complaints about not receiving support for his sensory disabilities. But, Chisago Lakes deprived Jacob of a supportive school environment and allowed him to suffer physically, emotionally, and spiritually.

In engaging in and performing the acts, conduct and omissions described throughout Plaintiff's Complaint, and in failing to comply with state and federal laws as outlined therein, Defendants' breached their duties and standards of care that they owed to Jacob that required them to implement and/or modify Jacob's IEP, implement disciplinary action against those who bullied him, and take all reasonable steps to protect and provide a safe environment for Jacob, thereby creating a school environment and culture tolerant and ripe for the torrent of bullying Jacob suffered. Defendants' acts, conduct and omissions placed Jacob at substantial risk of serious, immediate, and proximate harm that was both known and obvious. Mrs. Elsharkawy is entitled to recover damages for the loss of (a) the value of the financial support Jacob would have contributed to her; (b) the loss of gifts or benefits that Mrs. Elsharkawy would have expected to receive from Jacob; (c) medical, funeral and burial expenses; (d) the reasonable value of the household services that Jacob would have provided; and (e) the loss of Jacob's love, companionship, comfort, care, consortium, instruction, guidance, training, assistance, protection, affection, society and moral support and that of his next of kin. Defendants' willful, wanton and malicious conduct, omissions, failures to act and breaches of their duties and standards of care that they owed both her and Jacob negligently and/or intentionally caused Mrs. Elsharkawy to suffer severe emotional distress of the worst kind – culminating with finding her child hanging moments after his suicidal death such that she is entitled to exemplary and punitive damages.

Defendants also failed to (1) revise Jacob's IEP plan to address the above complaints and concerns; (2) failed to conduct any necessary review or

reevaluation of Jacob's IEP plan in connection with the above complaints and concerns or in 2018 whatsoever despite the apparent and escalating severity of the above complaints and concerns; and, (3) otherwise failed to perform legally required responsibilities in a timely manner, in violation of Section 504 of the Rehabilitation Act of 1973. For these reasons, Plaintiff also has a cause of action against municipal Defendants who violated the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. *Moore v. Chilton County Bd. of Educ.*, 936 F. Supp. 2d 1300, 1313 (M.D. Ala. 2013); *Hoekstra By and Through Hoekstra v. Indep. Sch. Dist. No. 283*, 103 F.3d 624, 626 (8th Cir. 1996).

2. Concise factual summary of Defendants' claims/defenses;

As described in Defendants' Answer, Defendants have numerous defenses to Plaintiff's claims, including the following:

Factually, Defendants acted in good faith and in compliance with all applicable laws at all relevant times when working with Plaintiff and J.L.E. and in addressing their concerns. They worked diligently to identify appropriate special education services for J.L.E. and properly implemented his IEP. Defendants took all proper and reasonable steps to investigate bullying allegations made by Plaintiff and/or J.L.E. based on the information they provided. Plaintiff's allegations of bullying as stated in the Complaint do not provide an accurate account of the actual circumstances. The allegations that J.L.E. was subject to bullying were not substantiated by J.L.E.'s own statements and/or other information available to the District during its investigations. Nonetheless, the District took appropriate remedial action to redress misconduct identified during those investigations and to ensure that J.L.E. was safe and supported in school. Defendants also took corrective action to address misconduct by J.L.E. as necessary and appropriate. Contrary to Plaintiff's claims, such actions did not violate J.L.E.'s IEP, which was silent on the issue of proper discipline or corrective action. In general, Defendants undertook significant efforts to make J.L.E. feel comfortable in school and to ensure the safety and security of all students. Plaintiff's death by suicide was an unpredictable, intentional act and was not reasonably foreseeable by Defendants.

While Plaintiff has asserted a myriad of legal claims against Defendants in her 63-page Complaint, she has failed to plead factual allegations which, if accepted as true, are sufficient to assert a cause of action against Defendants or upon which relief can be granted. Plaintiff's claims are limited or barred by or otherwise contrary to well-established law to the point that they are frivolous. Specifically, Plaintiff has failed to allege sufficient facts for a claim asserted under 42 U.S.C. § 1983 under the standard set forth in *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 664 (1978). She has otherwise failed to allege facts that even if accepted as true, rise to the level of behavior that "shocks the conscience" as needed to support her substantive due process claim. *See, e.g.*, *Hart v. City of Little Rock*, 432 F.3d 901 (8th Cir. 2005). And Plaintiff has failed to allege that

8

any similarly situated student was treated differently than J.L.E., as required to support an equal protection claim. *See, e.g.*, *Carter v. Arkansas*, 392 F.3d 965, 969 (8th Cir. 2004) (comparator must be similarly situated "in all relevant respects").

With respect to Plaintiff's claims under the ADA, Section 504, or the Individuals with Disabilities Act ("IDEA"), she has failed to exhaust administrative remedies, as required under those laws; school officials may not be held individually liable under these laws; and Plaintiff has failed to allege that the District and its officials acted with bad faith or gross misjudgment. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999); *C.N. v. Willmar Public Schools*, 2008 WL 3896205 (D. Minn. 2008); *See Monahan v. State of Nebraska*, 687 F.2d 1164, 1170–71 (8th Cir. 1982). As such, these claims must also fail as a matter of law.

The claims Plaintiff attempts to premise on state and common law also fail. Neither the District's policies nor the cited state statutes create or support a private cause of action against the District related to alleged violations of those statutes or alleged bullying behavior. Further, school officials and school districts do not owe a duty of care outside of school or school related activities and may not be held liable for injuries that a student suffers when not in school or involved in a school related activity. *See Y.L. v. Independent Sch. Dist. No. 625*, No. CX-95-799, 1995 WL 507619 (Minn. App. Aug. 29, 1995). School districts and school employees are also not liable for intentional acts of students, which are a superseding, intervening cause of their own injury. J.L.E.'s decision to take his own life was just such an act and was the proximate cause of his death. Plaintiff's intentional infliction of emotion distress allegations fail because none of the conduct alleged in the Complaint, even if accepted as true, rises to the level of extreme or outrageous conduct. *See, e.g.*, *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn. 1983).

Lastly, multiple claims set forth in the Complaint are barred by immunity. Among other immunity defenses, school officials have official immunity for the exercise of discretion or independent judgment in the investigation of inappropriate conduct. *Doe v. Park Center High School*, 592 N.W.2d 131 (Minn. App. 1999).

3.  Statement of jurisdiction (including statutory citations);

This Court has original federal question jurisdiction over Plaintiffs' claims of violations of the Substantive Due Process and Equal Protection Clauses of the Fourteenth Amendments of the United States Constitution; Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.; Title V of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq.; 29 U.S.C. § 794; 42 U.S.C. § 1983; 42 U.S.C. § 1988; 28 U.S.C. § 1341; 28 U.S.C. § 1343; and, federal common law.

This Court has subject matter jurisdiction pursuant to 20 U.S.C. § 1400(i)(2)(A).

  This Court has supplemental jurisdiction over Plaintiffs' state law claims, including, but not limited to, Plaintiffs' claims of violations of Minn. Stat. § 363A.11, Minn. Stat. § 604.01, Minn. Stat. § 573.02, and Minnesota common law, pursuant to 28 U.S.C. § 1367.

  This Court also has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Minnesota. This Court has personal jurisdiction over Defendants because Defendants reside or are municipal corporations of Minnesota and because the conduct at issue in this litigation took place in Minnesota. Lastly, venue is proper pursuant to 28 U.S.C. § 1391 as to Defendants because all Defendants reside in and conduct business in the State of Minnesota and because Defendants' acts and/or omissions took place in Minnesota.

4.  Summary of factual stipulations or agreements;

  None.

5.  Statement of whether jury trial has been timely demanded by any party;

  Plaintiff demanded a jury trial in this case as per its Complaint. Dkt. 1.

6.  Statement of whether all process has been served, all pleadings filed, and any plan for any party to amend pleadings or add additional parties to the action;

  On September 16, 2020, Plaintiffs issued Summons (Dkts. 3 and 4) as to each Defendant in this matter. On December 4, Defendants' counsel executed waivers of service of process. Dkts. 12 and 13. Plaintiff does not currently anticipate amending the pleadings or adding additional parties to this action. Should Plaintiff anticipate amending the pleadings or adding other parties, it will do so in accordance with the rules set forth by this Court, along with the Local and Federal Rules of Civil Procedure.

7.  If applicable, a list of all insurance carriers/indemnitors, including limits of coverage of each defendant or statement that the defendant is self-insured;

  Defendant School District and its employees are insured by Hanover Insurance and the limits of its insurance policy are $1,000,000/$1,000,000 per occurrence/aggregate. Defendant Angela Christenson is employed by St. Croix River Education District, which is also insured by Hanover Insurance and the limits of its insurance policy are 1,000,000/$3,000,000 per occurrence/aggregate.

**DISCOVERY**

8

Pursuant to Fed. R. Civ. P. 26(f), the parties must prepare a discovery plan that is designed to maximize the efficiency of pretrial case preparation. The parties must review and address each of the matters set forth in Fed. R. Civ. P. 26(f)(3)(A)-(F) and design a discovery plan that is appropriate and proportionate to the case. The Court expects counsel and parties to cooperate in the development and implementation of the discovery plan.

The details of the discovery plan should be set forth in this Report. The following discovery schedule and limitations are intended to guide the parties and should be useful in the ordinary case; however, the parties are encouraged to reach agreement on, and suggest to the Court, a discovery plan that takes into account the unique circumstances of the individual case. To the extent the parties cannot reach agreement on any particular item, they should set forth their separate positions in this section so that they can be discussed at the Pretrial Conference.

**FACT DISCOVERY**

The parties recommend that the Court establish the following fact discovery deadlines and limitations:

1. The parties must make their initial disclosures required by Rule 26(a)(1) on or before April 15, 2021.

2. Fact discovery procedures shall be commenced in time to be completed on or before July 15, 2022.

3. The parties **do not** believe that discovery should be conducted in phases or limited to or focused on certain issues or certain sources before others. (If so, describe.)

4. The parties propose that the Court limit the use and number of discovery procedures as follows:

   a) Up to 25 interrogatories, counted in accordance with Rule 33(a), may be served by each side on any party.

   b) Up to 25 document requests may be served by each side on any party. The parties understand that objections to document requests must meet the requirements of Rule 34(b)(2)(B). The parties agree that documents may be produced electronically, to the extent that this is reasonably feasible.

   c) Up to 50 requests for admissions may be served by each side on any party.

5. No Rule 35 Medical Examinations shall be taken by Defendant.

8

6. No more than **17** depositions, excluding expert witness depositions, shall be taken by either side.

7. Where appropriate, the parties are encouraged to discuss possible additional agreements concerning limitations on the number and/or length of depositions, procedures for noticing and taking Rule 30(b)(6) depositions, the arrangements that may be needed for depositions taken outside the U.S. and/or in a language other than English, and other issues that, if addressed early, could make deposition discovery more cost-effective and avoid costly and time-consuming disputes.

   The parties have reached the following additional agreements concerning the taking of depositions: N/A.

8. The parties have agreed upon the following additional limitations on discovery procedures: N/A.

9. <u>Other discovery issues</u>.
   a) Discovery of Electronically Stored Information. The parties have discussed issues about preservation, disclosure, production, or discovery of electronically stored information, as required by Fed. R. Civ. P. 26(f), and request the Court to include the following agreement in the scheduling order: If any issue related to the discovery of electrically stored information arises, the parties will attempt to resolve the issue collaboratively before seeking assistance from the Court.

   b) Claims of Privilege or Protection. The parties have discussed issues about claims of privilege and of protection as attorney work-product or trial preparation materials, as required by Fed. R. Civ. P. 26(f), including whether the parties agree to a procedure to assert these claims after production, or have reached any other agreements under Fed. R. Evid. 502, and **do** request the Court to include the following agreement in the scheduling order or as part of a protective order:

   > The parties agree to follow the procedure set forth in Fed. R. Civ. P. 26(b)(5)(B) regarding information produced in discovery that is subject to a claim of privilege or protection as trial-preparation material. Pursuant to Fed. R. Evid. 502, the inadvertent production of any documents in this proceeding shall not constitute a waiver of any privilege or protection applicable to those documents in this or any other federal or state proceeding.

**EXPERT DISCOVERY**

The parties anticipate that they **will** require expert witnesses at trial, and propose that the Court establish the following plan for expert discovery:

1. Plaintiff anticipates calling up to 2 expert. Defendant anticipates calling up to 2 expert. Each side may take one deposition per expert.

2. Disclosure of the identities of expert witnesses under Rule 26(a)(2)(A) and the full disclosures required by Rule 26(a)(2)(B) (accompanied by the written report prepared and signed by the expert witness) and the full disclosures required by Rule 26(a)(2)(C), shall be made as follows:

    a) Identities by Plaintiff on or before March 1, 2022.
    Disclosures by Plaintiff on or before March 15, 2022.

    b) Identities by Defendant on or before May 1, 2022.
    Disclosures by Defendant on or before May 15, 2022.

    c) Rebuttal identities and disclosures shall not be allowed.

3. Expert discovery, including depositions, shall be completed by July 15, 2022.

## NON-DISPOSITIVE MOTION DEADLINES

The parties propose the following deadlines for filing non-dispositive motions:

1. Except as provided in paragraph 4 below, all motions that seek to amend the pleadings or to add parties must be filed and served on or before March 1, 2021.

2. No motions that seek to amend the pleadings to include punitive damages, if applicable, are allowed.

3. Except as provided in paragraph 4 below, all non-dispositive motions and supporting documents, including those that relate to fact discovery, shall be filed and served on or before August 15, 2022.

4. All non-dispositive motions and supporting documents that relate to expert discovery shall be filed and served on or before August 15, 2022.

## PROTECTIVE ORDER

Plaintiff believes a protective order may be necessary related to medical and/or

8

mental health information. Defendants believe a protective order is necessary before any private or confidential information subject to the Family Educational Rights and Privacy Act or the Minnesota Government Data Practices Act about anyone other than Plaintiff or J.L.E. may be disclosed by Defendants in discovery. The parties will work together to draft a protective order that will adequately address these issues and will submit it for the court's approval, noting any areas of disagreement.

## DISPOSITIVE MOTION DEADLINES

The parties **do not** believe that expert discovery must be completed before dispositive motions are filed. The parties recommend that all dispositive motions be filed and served (and heard, depending on District Judge assigned) on or before November 15, 2022.

## SETTLEMENT

1. The parties must conduct a meaningful discussion about possible settlement before the initial pretrial conference, including a written demand by the Plaintiff(s) and a written response by each Defendant. The parties must also discuss whether private mediation or an early settlement conference with the Court (or another form of alternative dispute resolution) would be productive and, if so, when it should occur and what discovery, if any, would be necessary to conduct before such a conference.

   The results of that discussion, including any proposals or recommendations, are as follows:  The parties discussed settlement and have no proposals or recommendations.

2. Each party will email to Magistrate Judge Wright's chambers, no later than **one (1) week before** the pretrial conference, a confidential letter of no more than three (3) pages, setting forth what settlement discussions have taken place, whether the party believes an early settlement conference would be productive, what discovery each party believes is necessary before an early settlement conference can take place and any additional, confidential information about the party's interest in settlement or possible settlement proposals as may be of assistance to Magistrate Judge Wright in planning or furthering early settlement efforts. [NOTE: This confidential letter should not advance arguments or positions on issues that may come before Magistrate Judge Wright for ruling.]

3. The Court will discuss this topic with the parties at the pretrial conference and will set a date for an early settlement conference or for a status conference to determine when the case will be ready for a productive settlement conference.

## TRIAL

1. Trial by Magistrate Judge:

   The parties **have not** agreed to consent to jurisdiction by the Magistrate Judge pursuant to Title 28, United States Code, Section 636(c). (If the parties agree, the consent form, signed by both parties, should be filed with the Clerk of Court.) Please note that if the parties consent to magistrate judge jurisdiction, <u>all</u> proceedings, including trial by jury, if any, will be before the magistrate judge assigned to the case.

2. The parties agree that this case will be ready for trial on **April 1, 2023**. The anticipated length of the **jury** trial is 6 days.

**CAIR-MINNESOTA**

Dated: February 4, 2021

/s/ Alec Shaw
Alec Shaw (MN 0401082)
2511 East Franklin Avenue, Suite 100
Minneapolis, MN 55406
Phone: (612) 206-3360
Email: ashaw@cair.com

**CAIR LEGAL DEFENSE FUND**

/s/ Lena Masri
Lena F. Masri (VA 93291)
Gadeir I. Abbas (VA 81161)
Justin Sadowsky (VA 73382)
453 New Jersey Ave., S.E.
Washington, D.C. 20003
Phone: (202) 742-6420
Email: lmasri@cair.com
       gabbas@cair.com
       jsadowsky@cair.com

**ATTORNEYS FOR PLAINTIFF**

**RUPP, ANDERSON, SQUIRES & WALDSPURGER, P.A.**

Dated: February 4, 2021

/s/ Kristin C. Nierengarten
Michael J. Waldspurger (#261385)

8

Kristin C. Nierengarten (#395224)
333 South Seventh St., Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: mick.waldspurger@raswlaw.com
kristin.nierengarten@raswlaw.com

**ATTORNEYS FOR DEFENDANTS**