UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Faith Elsharkawy**, as herself in her individual capacity, and as Trustee for the Next-of-Kin of J.L.E., Decedent,<br><br>Plaintiff,<br><br>v.<br><br>**Chisago Lakes School District Board of Education**, et al.,<br><br>Defendants. | Case No. 20-cv-01971 (DSD/ECW)<br><br>Hon. Judge David S. Doty |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RULE 30(b)(6) TESTIMONY AND DOCUMENT PRODUCTION

Faith Elsharkawy, as herself and as Jacob's Trustee, seeks this Court's intervention for two reasons: (1) because Defendant Chisago Lakes School District refuses to sit for a 30(b)(6) deposition of any kind and (2) because Defendant Chisago Lakes School District continues to withhold responsive documents that obviously exist, including footage of a violent bullying incident against Jacob. Having conferred with opposing counsel, and unable to narrow the dispute via negotiation, Elsharkawy now moves this Court to compel Defendant Chisago Lakes School District to sit for a 30(b)(6) deposition and provide the full slate of documents and information responsive to Plaintiff's May 5, 2021, and June 15, 2022, requests.

### INTRODUCTION

The focus of Plaintiffs' presentation—at summary judgment and during trial—will be to show the endless parade of neglectful things the school did, the bullying against Jacob it tolerated, the medical-record-documented violence that ensued, and the relentless punishment school leaders imposed on Jacob for reasons related to his disabilities. Plaintiffs

1

will be offering this proof in the face of inaccurate testimony, implausible amnesia plaguing the witnesses, and government officials eager to avoid a fair adjudication of this case. We will need all the evidence we can get to reveal what really happened.

But Defendants seek to short circuit the normal scope of discovery by refusing to allow the Chisago Lakes School District to even sit for a deposition. Plaintiffs want to question school officials about the risk of suicide we believe Defendants knew about, at least one week before Jacob's death, and chose to do nothing. Plaintiffs want to question school officials about the violent bullying that apparently went almost completely undocumented via the normal processes. And Plaintiffs want basic responsive documents—like video of a violent bullying incident the District's teachers testify to viewing—that will be needed to dispute the rosy, not accurate facts Defendants are trying to force upon the Court.

These are not extravagant requests. Plaintiffs are trying to prove their case via discovery that is measured to fit their needs and respectfully request the Court order Defendants to comply.

## ARGUMENT

I. **No rule authorizes Chisago Lakes School District's to refuse to sit for a deposition under Rule 30(b)(6).**

Federal Rule of Civil Procedure 30(b)(6) requires that organizations – including government entities – designate and produce representatives for deposition upon notice from a party to the litigation. "The persons designated *must* testify about information known or reasonably available to the organization." Fed. R.Civ. P. 30(b)(6) (emphasis added). The District, though it responded to Plaintiff's 30(b)(6) notice and designated three officials on ten separate topics, decreed that the rules require nothing more and never made their designees available for a deposition. The federal rules do not allow this.

Plaintiff served the District under Rule 30(b)(6) on June 15, 2022, a full month before the close of discovery. Ex. A, 30(b)(6) Notice. The notice provided a list of the matters for examination, as required by the rule, and the deposition date noticed was July 13. *Id.* Along with the notice, Plaintiff's counsel offered, as always, to adjust dates for the 30(b)(6) or any other remaining deposition at the District's convenience within the month remaining in discovery. Ex. B, June 15 Email. Plaintiffs had flagged on multiple occasions for the District the need for 30(b)(6) deposition dates as early as March 28. Ex. C, March 28 Email. *See also* Ex. D, June 9 Email. Having repeatedly raised the issue, and noticing the deposition with more four weeks of discovery remaining, it should come as no surprise to Defendants that Plaintiffs viewed the District's 30(b)(6) deposition as the most important deposition in this case.

Defendants first responded to the 30(b)(6) notice on June 17 promising a full response the following week, with a note that July 13 "will not work." Ex. E, June 17 Email. Their email decreeing that July 13th "will not work" did not, however, negate the District's obligations under Rule 30(b)(6). And Plaintiff offered to do the District's 30(b)(6) deposition any date the week of July 12-15 in an effort to accommodate whatever scheduling issues Defendants were having . Ex. F, June 21 Email. Defendants made no mention that intended refuse to make any school official available to testify no matter when.

The following week, Defendants designated Carrie Hoffman (for Topics 1, 2, 5, 6, 7, 9, 10, 13), Jason Thompson (for topics 2, 3, 12), and Nicole Woodward (for topics 11). They did not, however, suggest a different date for the District's deposition. Logistics about the District's 30(b)(6) arose again on July 5th. Ex. H, July 5 Email. But it was not until July 7th that Defendants revealed that they were opposed to any kind of 30(b)(6) deposition no matter

3

when, even on the topics for which the District had already designated witnesses. Defendants explained that they had "assumed" Plaintiff "would not be proceeding" with the District's deposition, that Defendants' counsel had no dates available between then and the July 15 discovery deadline, and that they would not allow the District's deposition without a court order. Ex. I, July 6-7 Email. Defendants threatened that Plaintiffs' effort to get 30(b)(6) testimony from the District—the central defendant here--"will be viewed as harassing, unduly burdensome, unnecessarily cumulative, and contrary to Rule 30" because the District designated witnesses who had been deposed on their personal knowledge weeks before the June 15 Notice even went out. *Id.*

But the 30(b)(6) depositions are not made duplicative, because the District decided to designate some officials who Plaintiffs deposed as individuals. "The testimony of a witness noticed as an individual does not bind an entity as a 30(b)(6) witness does." *Majestic Building Maintenance, Inc. v. Huntington Bancshares Inc.*, 2018 WL 3358641 at *12 (S.D. Ohio, July 10, 2018) (collecting cases). Rule 30 allows depositions of a witness in both her individual and her corporate capacity because the depositions serve distinct purposes, impose different obligations, and only the entity deposition can provide litigants with "all the relevant information known or reasonably available to the entity" on the topics for which District officials were designated for. (citing *Commodity Futures Trading Comm. v. Midland Rare Coin Exch., Inc.*, No. 97-7422-CIV, 1999 WL 35148749 at #3-4 (S.D. Fla. July 28, 1999); *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st Cir. 2000) (imposing sanctions and fees for refusing to produce 30(b)(6) witnesses because the issuing party "had in early stages of the case already deposed the employees")).

4

Further, "the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Trustee for Sobolik v. Briggs & Stratton Corp.*, 2010 WL 11640194 at *7 (D. Minn. June 2, 2010). Unlike individual depositions, 30(b)(6) depositions obligate Defendants to prepare the designees on matters set out in the deposition notice so they may give "knowledgeable and binding answers for the corporation." *Id.* Ultimately, prior testimony from individual fact witnesses does not relieve Defendants from their obligation to designate and produce witnesses under Rule 30(b)(6). *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 122 (E.D. Mich. 2019). And if the Court sides with the District, Defendants' arguments establish a kind of cheat code that litigates can use to avoid Rule 30(b)(6)'s requirements. Simply designate representatives who had been deposed earlier in the litigation, and then claim harassment and undue burden if pressed.

This is deposition is critical to Plaintiffs' claims. Of Defendants' three designees, only two—Hoffman and Thompson—were previously questioned in their individual capacities,. Woodward was previously deposed as a corporate designee of the St. Croix River Education District, a service provider to which Defendants outsource the administration of their special education programs. Ex. J, Woodward Dep. at 1, 6. Between the two school employees designated by Defendants, "I don't recall," and "That wasn't my role," were common refrains in their individual depositions.[1] This piecemeal, non-answer testimony, even if offered in good faith, does not provide Plaintiff with a clear picture of the facts central to her case.

---

[1] **Ex. K, Hoffman Dep**. at 27:22-28:6 (does not recall if bullying was discussed in IEP meeting), 52:17-19 (does not recall investigating behavior referrals for JLE), 67:17-21 (does not recall accommodations for JLE absences), 68:9-12 (does not recall Faith's concerns regarding outside evaluation during IEP meeting), 68:13-15 (does not recall if bullying was discussed at the meeting), 68:16-19 (does not recall Faith having concerns about staff

5

One example illustrates the importance of the District's 30(b)(6) testimony. Defendants' witnesses so far claim they had no knowledge of Jacob's suicidal intentions. But a few days following Jacob's death, a counselor employed by Therapeutic Services Agency working as an agent of the District, called the mother of Jacob's best friend. Ex. M, Johnson Aff. That call followed a meeting, just days after Jacob's death, between Ms. Johnson, one of the District's teachers, and the counselor. That meeting was about staff concerns that Jacob's close friend may be considering hurting himself. During the call, the counselor informed Ms. Johnson that Jacob and her son had been searching ways to die or how to tie a noose at school a week before Jacob's death. *Id.* Now that Jacob had died by suicide, the counselor was concerned the boys may have had a suicide pact, and she wanted to ensure that Ms. Johnson was looking for warning signs. *Id.* Ms. Johnson confronted the counselor, asking why she had

---

implementing JLE's IEP), 68:20-23 (does not recall conversation on disciplinary processes applied to JLE), 68:24-69:2 (does not recall speaking about truancy during the meeting), 131:18-23 (does not know if mitigation steps were taken after Oakley's threat, or after assault), 131:24-132:2 (does not recall if assault mitigation steps were documented), 148:10-12 (does not recall speaking to any witnesses to the threat), 165:14-16 (does not remember details of second incident), 176:17-21 (does not know if the bus driver called the police), 193:9-15 (does not recall other student grabbing JLE's throat), 194:25-195:1 (does not recall whether that student was disciplined), 202:9-12 (does not remember a discussion about not reporting incident to police), 268:14-18 (does not remember discussing assault incident as a bullying incident); **Ex. L, Thompson Dep**. at 5:1-4 (does not know if the district required suicide prevention training); 15:4-17 (does not know if school nurse disagreed with doctors' note diagnoses); 34:7-11 (does not know if JLE had any physical incidents with other students); 37:10-12 (does not recall if paras escorted JLE between classes despite supervising paras); 41:12-25 (did not know JLE's accommodations); 41:14-16 (does not recall if JLE's conditions were covered in doctor's notes or if reviewed before truancy referral); 42:7-10 (does not recall reviewing JLE accommodations); 46:11-15 (did not know JLE's mental health issues); 46:7-12 (does not recall if TSA agent gave information on JLE's mental health); 48:1-10 (does not recall counting absences as unexcused).

6

not informed both boys' mothers before Jacob died. *Id.* The counselor went quiet and quickly ended the call. *Id.*

And yet, when deposed, the counselor testified that she had not seen any warning signs and had no reason to believe that Jacob would engage in self-harm or suicide. Ex. X, Malm Dep. 45:14-46:4. And despite her prior knowledge of Jacob's searching the previous week, she also testified that she was surprised by Jacob's suicide. *Id.* Plaintiffs believe that the District's witnesses have not provided accurate testimony and that an appropriately-prepared designee's testimony would include these kinds of dispositive-level facts that a 30(b)(6) witness would be obligated to testify about . Tellingly, despite having information regarding this allegation, including the names of the other student and mother involved, for months, Defendants made no effort to depose either of them.

Plaintiff has tried to avoid this avoidable discovery dispute. Plaintiff noticed her first deposition in this case on March 21st. Ex. N, March 21 Email; *see also* But over the course of the four-month deposition period, Defendants requested 16 schedule changes, in one case delaying a deposition more than two and a half months. Ex. 1, Noe-Lehenbauer Declaration. But they never refused to produce a witness or reschedule, and they never failed to suggest an alternate date when the noticed date was not convenient, even during the week of July 11-15. Despite receiving notice of the 30(b)(6) deposition 30 days in advance, Defendants inexplicably remained intransigent.

Upon learning Defendants did not intend to produce designees, Plaintiff's counsel immediately attempted to meet and confer via email and telephone. Ex. Q, July 7 Plaintiff's Email. Plaintiff offered to limit its deposition to the topics narrowed by Defendants, to change the date of the deposition, or even to seek a "short, limited-purpose" discovery extension to

7

accommodate Defendants' schedules. *Id.* Despite a subsequent telephone conference the following day, and several more after that, Defendants still refused to produce District designees. But this time, Defendants added a new claim that the deposition was improperly noticed somehow because Plaintiff's counsel suggested alternate dates at Defendants' request. Ex. R, July 8 Emails.

Plaintiff's counsel again requested a meet and confer regarding the 30(b)(6) deposition on July 11, offering again to accommodate Defendants' schedules through evening or split depositions, or to seek a brief extension, to no response. Ex. S, July 11 Email.

Defendants' counsel has made every step of this litigation contentious, from refusing minor professional courtesies to reading bad faith into every word from Plaintiff's counsel. But in this as in all disputes, Plaintiff's counsel tried everything within its power to resolve this issue before burdening the Court with it. We now ask the Court to intervene and compel Defendants' 30(b)(6) testimony.

## II.     Chisago Lakes School District continues to withhold responsive documents.

Plaintiff served her first set of document requests in May 2021. Discovery was then stayed, without objection from Plaintiff, pending the Court's denial of Defendants' motion to dismiss. Dkt. 43. It would be five months before Defendants would produce a single document. Dkt. 52. And it has now been another 10 months since Defendants produced nearly 20,000 pages of documents, at least one-third of them duplicates. But as depositions progressed, Plaintiff learned of more and more documents that had been withheld.

On June 15, one month before the end of discovery, Plaintiff sent Defendants a list of responsive documents that had been mentioned in the first five depositions but had not been produced. Ex. T, 6.15 Email and RFP. With that list, Plaintiff also served her final request

8

for production of all documents referenced in depositions in the event Defendants did not believe those documents were responsive to earlier requests. *Id.* As depositions progressed, Plaintiff updated the list as documents came up in testimony. Ex. U, 6.17 Email; Ex. V, 7.6 Email.

Defendants chose not to respond to any request until July 7, only then informing Plaintiff that "the time has passed to serve new discovery requests given the July 15 discovery deadline." Ex. W, 7.7 Doc. Email. Claiming to "calculate[] according to Rules 33 and 34," Defendants ostensibly counted each item in the list of documents referenced in depositions as a separate request and refused to produce anything above the total production request limit of 25. *Id.* But Plaintiffs were not serving new requests; they were asking Defendants Defendant asked Plaintiff to "identify which request" each document was responsive to, and Plaintiff obliged. *Id.*

On July 13, Plaintiff sent the following list of specific documents, citations to their reference deposition testimony showing the documents' existence, and the requests that those documents were responsive to. Those documents include the following:

- **Video of Bullying Incident:** The District possesses video of a violent incident against Jacob. (Hoffman at 194). They have not produced it, though RFP No 5 seeks "audio or video recordings…related to" related to Jacob's bullying. The District's look-the-other-way approach to Jacob's bullying, resulting in multiple violent incidents, is a big part of how Plaintiffs' will demonstrate that Defendants' judgment was so poor as to make it liable for Jacob's death.

- **School Portal Messages:** Defendants maintain a school portal where District employees communicate with students and their families. Plaintiffs know this, because

9

Ms. Elsharkawy used such a portal. But Defendants have not provided any information related to communications between Jacob and the school on the portal. This is responsive to RFP No. 1, served on Defendants more than one year ago, which asks the District to produce Jacob's "complete file."

- **Health Records:** Witnesses testified about JLE's health plan and other documentation regarding Jacob's health, and the counseling services the District's agents testified about that have yet to be produced (Claeson Dep at 20, 22, 27). This is responsive to RFP No. 1, served on Defendants more than one year ago, which asks the District to produce Jacob's "complete file."

- **Informally Maintained Notes:** RFP No. 2 asks for "a complete copy of any and all notes, taken in any format and however saved" related to Jacob, and the District's agents made clear that such informal records exist—though they have not been produced. (Claeson at 35, 103, 128-30). (Hoffman at 48). (Ertl at 9).

- **Withheld IEP Documentation**: Ms. Claeson's testimony indicates that there are staff-prepared agenda and minutes from meetings regarding JLE that exist and have not been produced. (Claeson at 35, 103, 128-30). The IEP is a central document in this case, and the agendas and minutes created by District officials bear on whether the misjudgments reflected in the IEP and the District's failure to follow it give rise to liability. These documents would be a part of Jacob's "complete file" requested by RFP 1 as well as RFP 3 which seeks "a complete copy of any and all notes, taken in any format and however saved" related to Jacob. These records include:

- o Documentation, notes, and information communicated to teachers, paraprofessionals, and administrators related to JLE's accommodations, health needs, and behavioral strategies each year (Mattson 46).

- o Documents, forms, or rubrics demonstrating how teachers rated J.L.E. on IEP progress reports, evaluations, and assessments (Mattson 40).

- o Reports produced by or delivered to CLSD administration related to IEPs, including but not limited to the annual IEP audit reports sent to Principal Dave Ertl from SCRED (Ertl at 123)—responsive to RFP 16's request for "policies, studies, statistics…related to [IEP] trainings."

- **Behavior Support Plan:** This document was created following JLE's Functional Behavioral Assessment and Reevaluation (Claeson at 173). It is responsive to RFP No. 7, which seeks the "evaluations, reports, assessments" and other documents that regard Jacob's IEP. These documents will establish that the District knew and should have known of Jacob's struggles and that they knew and should have known ways to avoid compounding those struggles.

- **Google Docs:** The District's agents testified about their use of Google Docs for work and communications related to Jacob. (Claeson at 179, Hoffman at 48). These records have yet to be produced, though they are a part of Jacob's "complete file" which RFP 1 seeks as well as the "communications related to" Jacob's IEP sought by RFP No. 7.

Plaintiff has a compelling need for these documents. Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action…" Fed. R.Civ. P. 26(b). Every document described in the list above is

11

responsive to Plaintiff's original May 2021 requests and central to proving her claims and overcoming opposing defenses. Plaintiff learning about the documents' existence near the end of discovery does not relieve Defendants of their obligation to produce responsive documents. If it did, no party would ever turn over damning evidence.

Defendants have not addressed these discovery deficiencies, even though they have been repeatedly brought to their attention. Defendants vaguely claimed to withhold every responsive document that exceeded 25 production requests from Plaintiff. But that is not how Rule 34 works. For every request, Defendants are obligated to produce responsive documents whenever they surface. To the extent Defendants object to a request, they must "state whether any responsive materials are being withheld on the basis of that objection." Fed. R.Civ. P. 34(2)(c). Defendants did not do that. Plaintiff's May 2021 requests were valid, and her June 15 requests were valid. All of the documents identified above are responsive to those requests and now must be produced.

Plaintiff bent over backwards, often taking on the burden that should have been borne by Defendants, to find a way to get the evidence that has been withheld. Following the July 15 discovery deadline, Plaintiff attempted again to meet and confer regarding these and other issues. But Defendants' counsel was not interested in resolving the discovery deficiencies identified by witness testimony. Ex. Y, 7.19-20 Emails. The Court should now compel Defendants to fulfill their minimum discovery requirements and produce the responsive documents identified above that they are currently withholding.

## CONCLUSION

Plaintiff asks the Court to extend discovery only to the extent necessary to compel:

a. Defendants to immediately schedule and produce District designees to sit for a deposition on the topics Defendants designated them for; and

b. Defendants to immediately provide the responsive documents identified above.

August 31, 2022  Respectfully,

CAIR LEGAL DEFENSE FUND

BY: /s/ Lena Masri
LENA F. MASRI (VA 93291)
lmasri@cair.com
GADEIR I. ABBAS (VA 81161)*
gabbas@cair.com
JUSTIN SADOWSKY (VA 73382)
jsadowsky@cair.com
KIMBERLY NOE-LEHENBAUER (OK 34744)**
knoelehenbauer@cair.com
453 New Jersey Ave. SE
Washington, DC 20003
Phone: (202) 488-8787

CAIR-MINNESOTA
BY: /s/ Alec Shaw
ALEC SHAW (0401082)
ashaw@cair.com

3500 16th Avenue South
Minneapolis, MN 55407
Phone: (612) 508-9329

*Mr. Abbas is admitted in VA, not in D.C. Practice limited to federal matters.

**Ms. Noe-Lehenbauer is admitted in OK, not in D.C. Practice limited to federal matters.

*Attorneys for Plaintiff*